**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LAUREN SHIFLETT, an individual, on behalf   )
of herself and all others similarly situated,   )   Case No. 8:20-cv-1880-JSM-AAS
                                            )
                        PLAINTIFF,          )
                                            )
v.                                          )   FIRST    AMENDED    CLASS
                                            )   ACTION COMPLAINT
VIAGOGO ENTERTAINMENT INC.,                 )
                                            )   JURY TRIAL DEMANDED
                        DEFENDANT.          )
                                            )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Lauren Shiflett ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant, Viagogo Entertainment Inc. ("Viagogo" or "Defendant"), and alleges as follows, based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. Defendant owns and operates "the world's largest secondary marketplace for tickets to live events."[1] The market operates primarily through Defendant's website, www.Viagogo.com (the "Viagogo Website").

2. On the Viagogo Website, sellers list tickets for sale to events such as, among other things, sporting events, concerts, theatre, and festivals. Buyers can find these tickets and purchase them directly through the Viagogo Website. Defendant charges a fee to both the buyers and sellers for use of Viagogo's services.

---

[1] *See* https://www.Viagogo.com/ (last accessed July 22, 2020).

1

3. This is a class action lawsuit on behalf of all persons who purchased tickets through Defendant, and who were deprived of a timely refund, or any refund whatsoever, when, in response the Coronavirus Disease 19 ("Covid-19") pandemic, events were cancelled or constructively cancelled.

4. Defendant has quietly sought to force the buyers to endure the financial losses of the event cancellation instead of issuing timely refunds pursuant to the Viagogo Website's terms and conditions ("Terms") and the implied covenant of good faith and fair dealing therein.

5. Defendant's uniform conduct in withholding refunds is equally applicable to Plaintiff and the Class. Plaintiff brings this class action against Defendant for: (i) breach of contract; (ii) breach of implied contract; (iii) conversion; (iv) violation of state consumer protection statutes; and (v) unjust enrichment.

6. Plaintiff seeks an order requiring Defendant to, among other things: (i) enforce the Terms and communications regarding refunds issued by Viagogo; (ii) cease issuing "credits" or "vouchers" in lieu of timely cash refunds to any Class member who has not requested such credits or vouchers; and (iii) pay damages and restitution to Plaintiff and Class members.

## PARTIES

7. Plaintiff Lauren Shiflett is an adult individual and is a resident and citizen of Hernando County, Florida.

8. Defendant, Viagogo Entertainment Inc., is a Delaware corporation headquartered and with its principal place of business, in Dover, Delaware, and is a citizen of the State of Delaware. Viagogo can be served through its registered agent: National Registered Agents, Inc., at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

## JURISDICTION AND VENUE

9. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class is a citizen of a different state that Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

10. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in Florida, and a substantial portion of the acts complained of took place in Florida, including the execution of the contract by Plaintiff and some members of the Class.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because Defendant conducts business in this District and a substantial part of the events that give rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

12. For years, in the process of building a marketplace in which consumers would be comfortable paying substantial prices, often beyond face-value, for event tickets from strangers on the internet, Viagogo relied on its Terms and business model that purportedly allow for a seamless refund upon cancellation of an event, which was incorporated into its various user agreements and marketed to prospective customers.

13. The Terms read in their entirety provide that, should an event be cancelled or constructively cancelled, Viagogo shall cancel the transaction, and provide a refund to the ticket purchasers.

14. To avoid financial losses, and potential future losses, due to the Covid-19 pandemic, Defendant has unconscionably and in breach of the implied covenant of good faith and

fair dealing refused to issue refunds for events that were cancelled, or wrongfully categorized events as re-scheduled in order to avoid refunds.

### *Viagogo Online Ticket Marketplace*

15. Viagogo is a secondary ticket marketplace that connects ticket sellers with buyers.

16. Viagogo requires all prospective sellers to register through its Viagogo Website in order to receive payments from Viagogo.

17. Following registration, sellers provide certain ticket information, including list price, and can post the tickets for sale to the Viagogo online marketplace, where buyers can view and purchase the tickets.

18. Once a purchase is completed, Viagogo charges the buyer and the seller a fee. The seller fee varies by event.

19. Viagogo charges buyers a service fee which covers specifically, among other things, "guaranteeing tickets and providing customer service."[2]

20. Buyers also are required to register with Viagogo in order to purchase tickets, and must provide their credit card or PayPal information to make such a purchase.

21. The vast majority of tickets are available to buyers through instant download or email delivery, and require no physical delivery.

22. Viagogo's business model and Terms are such that upon cancellation or re-scheduling of an event, it should allow for quick transaction cancellation and efficient refund.

23. For example, in the Terms, the "Seller will be paid 5-8 working days **after the event** if the delivery of the tickets was successful to the buyer. **We have the right to withhold**

---

[2] *See* https://www.Viagogo.com/Help/Buyer/29 (last accessed July 22, 2020).

**payment or collect repayment if the event was re-scheduled or canceled**. . . ."[3] (emphasis added).

24.  The Terms also state that "[i]n the event that an event is cancelled or re-scheduled, viagogo reserves the right to cancel a seller's transaction."[4]

25.  Further, the Terms provide that "[n]o refunds, cancellations or exchanges will be issued for date or time changes, partial performances, or lost tickets," which implies that for an event that is cancelled or constructively cancelled (indefinitely postponed without a new date or time), a refund is available.

26.  According to its Terms and business model, having not yet passed the funds to the Sellers for events that have not taken place, Viagogo should have had the funds from the ticket sales readily available to refund upon the cancellation or constructive cancellation of the events.

27.  Viagogo's online ticket marketplace is made possible by the promise, or perception, that it is a viable, protected medium through which buyers can obtain event tickets in a protected, low-risk environment.

28.  The availability of a refund for the cost of the tickets upon an event cancellation has been Viagogo's longstanding policy, and its customers, including Plaintiff, relied upon that promise when making ticket purchases.

29.  When confronted with a claim that Viagogo was withholding refunds, a Viagogo spokesperson reinstated its Terms by saying "Viagogo issue refunds for cancelled events, so what [the claimant] is claiming is fundamentally inaccurate."[5]

---

[3] *Id.*
[4] *Id.*
[5] See https://www.bbc.com/news/newsbeat-53513500 (last accessed September 30, 2020)

30. Viagogo intends for its customers to rely on the this refund policy when making purchases, as it knows that much cheaper tickets are available directly to its customers through other mediums, including cash sales outside of venues and direct buyer-to-seller marketplaces.

31. Because of the availability of a refund, users are willing to pay premium prices for tickets, and to pay substantial fees to Viagogo on top of the ticket price, even though substantially identical tickets were available for purchase elsewhere.

32. A major component of Viagogo's value, and viability as a company, is that purchases are secure and refunds are available for cancelled events. Such a benefit is not available to buyers who make purchases directly from other available resellers, throughout other direct online market sites such as craiglist.com or Facebook Marketplace, where there is no intermediary exercising authority and control over the exchange – and where tickets can be purchased without fees and other markups.

33. Plaintiff and members of the Class relied on the availability of, and were contractually entitled to, a refund upon cancellation of an event when purchasing their tickets using Viagogo's services.

### *Viagogo's Response to the Covid-19 Crisis*

34. By March 2020, it became apparent that the United States was about to be hit hard by the Covid-19 virus. This impending crisis inspired fear and trepidation among consumers who were increasingly unwilling to venture into public or attend public gathering. Accordingly, confidence in making event ticket purchases among Viagogo's customers was rapidly deteriorating.

35. In response to the Covid-19 pandemic, Viagogo updated its Viagogo Website to create a new section addressing cancellations and postponements caused by the virus.[6]

36. On its Viagogo Website, Viagogo made the following statement about events that were cancelled or postponed:

> My event is cancelled or postponed - What do I do?
>
> If your event has either been cancelled or postponed, as soon as we know more information we will contact you with all the relevant details. Generally;
>
> **If the event is cancelled** – We will ask you to return the tickets and you will be refunded for your purchase.
> **If the event is postponed** – The tickets are usually valid for the new date. Please look out for an e-mail from us and remember to add viagogo on your safe list of contacts so that our e-mail doesn't go in your junk box. The email we will send will be specific to your event, and will have all relevant details and next steps.

[7]

37. Viagogo subsequently provided a "Coronavirus (COVID-19) Update" stating that:

> **If an event is cancelled** – you do not have to do anything. We will contact you. You will be entitled to a full refund or a 125% voucher.
> **If the event organiser is offering vouchers or tickets to another event** – you do not have to do anything. We will contact you. You will be entitled to a voucher or tickets to another event.
> **If an event has been postponed or rescheduled** – you do not have to do anything. We will contact you regarding the new date as soon as it is announced. All events are considered valid unless there has been an official announcement stating the event has been cancelled.

[8]

38. Although acknowledging that buyers are "entitled to a full refund," and advising buyers that they "do not have to do anything," Viagogo has continued to withhold refunds to buyers who bought tickets to events that were subsequently cancelled due to the Covid-19 pandemic.

39. Viagogo has collected—and consciously and intentionally continues to hold—funds, including fees, from ticket purchasers for cancelled or constructively cancelled events.

40. Even though many thousands of events have been cancelled, Viagogo wrongly refuses to classify events as "cancelled," in a timely fashion, allowing it to maintain dominion and control over even more funds which it has no legal right to possess or use for its own business

---

[6] *See* https://www.Viagogo.com/Help/Buyer/19 (last accessed July 23, 2020).
[7] *See* https://www.Viagogo.com/Help/Buyer/189 (last accessed July 23, 2020).
[8] *See* https://www.Viagogo.com/Help/Buyer/404 (last accessed July 30, 2020).

purposes. ("Instead [Viagogo] is claiming the events have been postponed, even when the organisers [sic] confirm they have been cancelled.").[9]

41. Plaintiff and other members of the putative class have requested refunds, but refunds have not been granted in a timely manner. Instead, Viagogo has presented Plaintiff and other purchasers with a choice between two wholly inadequate remedies: purchasers of tickets to cancelled events may receive a "voucher" from Viagogo with an 18-month expiration window, or take additional steps to request a cash refund, which Viagogo states may take "months" to process.

42. The Terms and the updates provided by Viagogo as to the Covid-19 pandemic clearly entitle buyers to a full refund of their monies paid for tickets to events that were cancelled due to the Covid-19 pandemic.

43. Despite the fact that Plaintiff and the Class made their purchases while the Terms were in full force, Viagogo has refused to honor that promise, shifting the burden of its corporate losses and potential future losses onto many thousands of its loyal customers.

### *Plaintiff's Use of Viagogo*

44. On or about March 3, 2020, Plaintiff Shiflett used Defendant's service to purchase two tickets to a Tool concert scheduled to occur in Tampa, Florida on April 19, 2020.

45. Plaintiff Shiflett paid approximately $410.95 for the tickets.

46. The event was cancelled.

47. Defendant did not contact Plaintiff Shiflett regarding the cancellation of the event. Instead, Plaintiff Shiftlett found out that the event was cancelled through Tool's Facebook page, wherein a post was made that all of the band's concerts scheduled in 2020 were cancelled.

---

[9] See https://www.theguardian.com/money/2020/jul/23/viagogo-refund-fans-gigs-cancelled-pandemic-tickets-policy (last accessed September 30, 2020)

48. Plaintiff Shiftlett contacted Defendant on multiple occasions from April through July. Defendant incorrectly indicated that the show was "rescheduled from its original date," and that, "[i]t was decided that tickets which had already been issued would remain valid for the new dates . . . ." Defendant then stated, "[o]nce the ticket order has been placed, Viagogo is unable to cancel orders. All orders are non-exchangeable/non-refundable."[10]

49. When Plaintiff Shiflett purchased the tickets through Defendant, her purchase was subject to the Terms. Her event was cancelled, and for months afterwards Viagogo failed to provide her a refund, despite numerous requests.

50. On August 12, 2020, Plaintiff Shiflett filed her initial Complaint against Viagogo in this action.

51. Two days later on August 14, 2020, after months of silence, and after ignoring or declining Plaintiff Shiflett's requests for a refund, Plaintiff Shiflett received an email from Viagogo confirming for the first time that the Tool concert has been "cancelled."

52. On August 17, 2020, Plaintiff Shiflett received an email from Viagogo stating it would be issuing her a voucher of 125% of the dollar value of original order within 72 hours. That email also stated that if Plaintiff instead wanted a refund, she was required to follow a link in the email within 14 days of receipt. The email further stated:

> However, due to the unprecedented number of cancelled and postponed events worldwide, and the continuously evolving impact of the current COVID-19 pandemic on the global live events industry, it could take up to several months to process your refund.

53. On August 20, 2020, Viagogo automatically issued a 125% voucher to Plaintiff Shiflett. To utilize the voucher, Plaintiff is required to log in to her Viagogo account, choose an

---

[10] Quote taken from a Live Chat transcript with a Viagogo agent, dated June 4, 2020.

9

event's tickets to purchase, and enter a "gift voucher" code included in the email. The voucher is only valid until February 20, 2022.

54. In short, for months after the Tool concert was cancelled, Plaintiff Shiflett repeatedly requested a refund and did not receive one. She has lost the use of the money she paid to Viagogo for a substantial period of time, beyond both the date the concert was originally scheduled to take place and the date on which it was cancelled. Even now, Viagogo has only sent Plaintiff Shiflett a voucher she did not want or request, and that she may not even be able to use before it expires. She has not received a refund, and Viagogo has not committed to providing one by any date certain.

## **CLASS ALLEGATIONS**

55. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who used Viagogo to purchase tickets to any event which was subsequently cancelled or constructively cancelled due to the Covid-19 pandemic, and who has not been issued any refund, or who have suffered damage by way of Defendant's delay in issuing refunds (the "Nationwide Class").

Additionally, Plaintiff Shiflett proposes the following, alternative class for the claim brought under the Florida Deceptive and Unfair Trade Practices Act:

> All persons residing in the State of Florida who used Viagogo to purchase tickets to any event which was subsequently cancelled or constructively cancelled due to the Covid-19 pandemic, and who have not been issued any refund, or who have suffered damage by way of Defendant's delay in issuing refunds(the "Florida Class").

56. Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a

10

controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

57. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after an opportunity to conduct discovery.

58. Numerosity. More than 10,000 events in the United States have been cancelled, postponed, or rescheduled, and Viagogo facilitates ticket sales to the vast majority of events in the United States to its millions of users. At a minimum, there are tens of thousands of Class members, but very likely many more, and joinder is impracticable. The exact size of the proposed class and the identity of all class members can be readily ascertainable from Defendant's records.

59. Commonality. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members. Common issues include:

   a. Whether there was a contract or implied contract between Plaintiff and Defendant, and if so, what provisions, if any, apply to Plaintiff's claims;

   b. Whether or the extent to which Defendant's statements and representations regarding the Terms are or constitute misrepresentations;

   c. Whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, and/or unjust enrichment;

   d. Whether Defendant knew or should have known that in the event of widespread event cancellations it would be unable to honor the Terms or issue refunds;

   e. Whether Defendant's conduct is violative of the Florida Deceptive and Unfair Trade Practices Act; and

    f.    The nature of the relief, including equitable relief, to which Plaintiff and the Class are entitled.

60.    **Typicality.** Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

61.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

62.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual Class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

63.    Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

64. Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

## **FIRST CAUSE OF ACTION**

### **BREACH OF CONTRACT**
### **(On Behalf of Plaintiff and the Nationwide Class)**

65. Plaintiff incorporates the factual allegations above as if fully set forth herein.

66. A contract was formed between Plaintiff and Class members on the one hand, and Defendant on the other, with respect to purchases made on Defendant's Viagogo Website.

67. The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by making ticket purchase(s).

68. The contract that governs the transactions at issue in this case includes the Terms that were operative at the time of purchase.

69. Defendant had an obligation to conduct itself in accordance with the implied covenant of good faith and fair dealing.

70. Plaintiff and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

71. The ticket(s) purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

72. Defendant breached the contract when it collected Plaintiff's and Class members' funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its Terms, and again when Defendant refused to provide refunds to Plaintiff upon demand.

73. Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

74. Plaintiff and Class members reasonably expected a timely refund when the events to which they had purchased tickets was cancelled.

75. Defendant's failure to provide timely refunds caused Plaintiff and the Class members damages in the forms of the unreturned funds and the lost time value of money.

76. As a result of Defendant's breach, Plaintiff and the Class members have been deprived of the contract's benefits and damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

77. Plaintiff incorporates the factual allegations above as if fully set forth herein.

78. In the alternative to Plaintiff's breach of contract claim set forth in her First Cause of Action, an implied contract was formed between Plaintiff and Class members on one hand and Defendant on the other. The implied contract included a promise by Defendant to provide a refund in the instance of event cancellations when Plaintiff and Class members made purchases of event tickets through Defendant's Viagogo Website.

79. Such implied agreement can be presumed from the acts of Plaintiff, Class members, and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

80. Defendant offered Plaintiff and other Class members tickets and a promise to a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiff and Class members.

81. Plaintiff and Class members accepted Defendant's offer by purchasing tickets from Defendant and remitting payment to Defendant.

82. Plaintiff and Class members paid good consideration to Defendant in exchange for the event tickets.

83. Plaintiff and Class members fully performed on their obligations under the bargain.

84. Defendant breached the contract by receiving and retaining Plaintiff and Class members' payments but then refusing to issue a full and timely refund of all payments made, including fees.

85. As a result of Defendant's conduct, Plaintiff and Class members suffered damages, including the unreturned funds and the lost time value of money, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Florida Statutes § 501.201,** *et.seq.*
**(On behalf of Plaintiff and the Nationwide Class, or alternatively, the Florida Class)**

86. Plaintiff incorporates the factual allegations above as if fully set forth herein.

87. Plaintiff and members of the Class are consumers, engaged in the purchase of goods and/or services.

88. Defendant's conduct, described herein, constitutes deceptive acts and/or unfair practices.

89. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

90. Defendant's conduct was likely to mislead consumers.

91. Such deceptive acts and/or unfair practices caused harm to Plaintiff.

92. Specifically, Defendant's deceptive acts and/or unfair practices included offering and advertising a refund that Defendant knew it would be unable to honor in the event of mass cancellations; refusing to honor the Terms; wrongly classifying events as "rescheduled" in order to avoid refunds; denying Plaintiff's refund; providing untimely refunds in the event that it did issue refunds; and attempting to force customers to accept vouchers of dubious value that they do not want in the middle of a public health and economic crisis.

93. As a result of Defendant's conduct, Plaintiff and other Class members suffered losses and damages, including the unreturned payments and the lost time value of money, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### CONVERSION
**(On Behalf of Plaintiff and the Nationwide Class)**

94. Plaintiff incorporates the factual allegations above as if fully set forth herein.

95. From the moment of cancellation or constructive cancellation, Plaintiff and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant for tickets to events that were cancelled, including all fees collected.

96. The funds held by the Defendant are earmarked for each transaction in order to provide a refund to the buyer upon cancellation of the event, or to pass the funds to the Seller after the event has taken place.

97. Plaintiff and Class members held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s), yet, Defendant continued to exercise control, dominion, or ownership over Plaintiff's and Class members' funds, including all fees collected.

98. Defendant intentionally and substantially interfered with property belonging to Plaintiff and the Class by taking possession of it, refusing to refund it, preventing Plaintiff and the Class from having access to it, and/or refusing to return it after a demand was made for its return.

99. Plaintiff and the Class did not consent to Defendant's conduct in withholding their funds.

100. Defendant's exercise of dominion and control over Plaintiff's and Class members' property was knowing and wrongful.

101. Plaintiff and the Class were harmed by Defendant's conduct.

102. The conduct of the Defendant was a substantial factor in causing this harm to Plaintiff and the Class.

103. As a result of Defendant's conduct, Plaintiff and other Class members have suffered damages, including the loss of their unreturned funds and the lost use of their money, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

104. Plaintiff incorporates the factual allegations above as if fully set forth herein.

105. In the alternative to Plaintiff's breach of contract claim set forth in her First Cause of Action, by taking and retaining possession and control of funds paid by Plaintiff, Defendant was enriched.

106. Plaintiff and Class members suffered damages by way of Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

107. Plaintiff and Class members therefore conferred a benefit upon Defendant, which benefit Defendant fully appreciated.

108. Defendant accepted and retained the benefit under circumstances that make it inequitable for Defendant to retain it without paying the value thereof.

109. Defendant has not provided appropriate or timely refunds, and according to its own Terms, has not paid the Sellers for the tickets since the events have not taken place. It is unconscionable to allow Defendant to retain the funds for its services, as well as the funds for the ticket sales, to events that were cancelled or constructively cancelled.

110. Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the events were cancelled, and it had no right to retain such funds and use them for its own benefit at the expense of Plaintiff and Class members, who received no benefit from the purchase.

111. Defendant knew that Plaintiff and Class members retained no benefit from the purchase, yet Defendant retained their funds anyway and diverted them for its own purposes without justification.

112. Plaintiff and Class members are left without adequate remedy at law as a result of Defendant's unjust enrichment.

113. Defendant's actions in retaining Plaintiff's and Class members' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

114. As a result of Defendant's wrongful conduct, Plaintiff and the Class have suffered damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, request the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the Class(es) and designate counsel of record as Class counsel;

(b) Order Defendant to provide actual damages, interest, and equitable monetary relief (including restitution) to Plaintiff and Class members, and/or order Defendant to disgorge profits it realized as a result of its unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and Class members;

(d) Order Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and Class members;

(e) Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(f) For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

(g) For costs of the proceedings herein;

(h) For reasonable attorneys' fees as allowed by statute or other authority; and

(i) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

DATED: October 1, 2020                    Respectfully submitted,

                                          */s/ Gary F. Lynch*
                                          Gary F. Lynch (admitted p.h.v.)
                                          Jamisen A. Etzel (admitted p.h.v.)
                                          Nicholas A. Colella (admitted p.h.v.)
                                          **CARLSON LYNCH LLP**

1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave.,
Suite 417
Aventura, FL 33180
Office: (305) 975-3320

*Counsel for Plaintiff and Putative Class(es)*